*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1580**

Saint Paul Building LLC,
Respondent,

vs.

Commonwealth Properties Incorporated,
Defendant,

John Rupp,
Appellant.

**Filed May 28, 2024
Affirmed
Ede, Judge**

Ramsey County District Court
File No. 62-CV-20-4031

Richard C. Landon, Kristin M. Stock, Lathrop GPM LLP, Minneapolis, Minnesota (for respondent)

Jack E. Pierce, Matthew D. Goldfine, Bernick Lifson, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Reyes, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this appeal from an amended judgment in a commercial lease dispute, appellant challenges the district court's decision to pierce the corporate veil and add him as judgment debtor. Because we conclude that appellant forfeited any procedural-due-process argument

and that the district court did not abuse its discretion in piercing the corporate veil and adding appellant as judgment debtor, we affirm.

## FACTS

Appellant John Rupp is the sole owner and shareholder of Commonwealth Properties Incorporated (Commonwealth). Rupp owns several ventures and various real estate, as his business is the acquisition, renovation, and management of historic properties. Rupp holds each property in an individual limited liability company (LLC). During the events relevant to this case, Commonwealth's function was to deal with the administration and bookkeeping of Rupp's LLCs.

Beginning in 2010, Commonwealth operated from the ninth and tenth floors of the Saint Paul Building, which is owned by respondent Saint Paul Building LLC (SPB). Rupp owned SPB until he sold it to a third party in 2018. In September 2018, following Rupp's sale of SPB, Commonwealth entered into a three-year commercial lease agreement with SPB. In January 2020, SPB informed Commonwealth that it was in default under the lease for failure to pay rent "from and after June 2019, totaling $48,355.57." In July 2020, after pursuing a successful eviction action to vacate Commonwealth from the premises, SPB filed suit against Commonwealth for breach of the lease agreement. Rupp was not a named party in the lawsuit at that time.

After taking Rupp's deposition, SPB moved for summary judgment against Commonwealth. The parties later notified the district court that they had reached a settlement agreement. Consistent with the parties' settlement agreement, the district court entered judgment against Commonwealth in the amount of $443,166.29. SPB later filed an

2

affidavit of identification of judgment debtor and then requested that the district court order Commonwealth to complete a financial disclosure form, as SPB claimed that Commonwealth had not satisfied the judgment. In connection with that effort, SPB deposed Rupp again.

Following those proceedings, SPB moved to amend the judgment to pierce the corporate veil and add Rupp as judgment debtor. SPB attached transcripts from Rupp's depositions as exhibits in support of the motion. Commonwealth opposed SPB's motion, including by arguing that Rupp was neither served an amended pleading nor afforded an opportunity to answer and defend against SPB's claims.

The district court continued a hearing on SPB's motion to amend the judgment to afford SPB an opportunity to serve Rupp personally. At the later hearing, citing its multiple unsuccessful attempts to complete personal service upon Rupp, SPB moved the district court to allow service by publication. The district court granted SPB's motion. SPB then served Rupp with the motion to amend the judgment via publication. The parties later appeared before the district court for another hearing, at which they argued the merits of SPB's veil-piercing claim. After filing an order and memorandum granting SPB's motion to amend the judgment to add Rupp as judgment debtor, the district court entered an amended judgment.

Rupp appeals.

**DECISION**

## I. Rupp forfeited any procedural-due-process argument.

Rupp contends that it was procedurally improper and a violation of due process for the district court to add him as judgment debtor. Noting that SPB first moved under Minnesota Rule of Civil Procedure 52.02—which governs amendment of district court findings—Rupp maintains that the district court erred in granting SPB's motion because there were "no findings to amend" and because "[SPB's] motion on its face was untimely." In response, SPB questions whether Rupp sufficiently preserved this issue for appeal. We agree with SPB that Rupp has forfeited his procedural-due-process argument.

It is true that SPB initially moved to amend the judgment to pierce the corporate veil and add a judgment debtor under rule 52.02, and that Commonwealth's opposition to that motion included an argument that the motion was untimely under the Minnesota Rules of Civil Procedure. But SPB later served Rupp with amended pleadings seeking to amend the judgment to pierce the corporate veil and add Rupp as judgment debtor—as well as supporting memoranda—none of which cited or relied on rule 52.02. And Rupp's memorandum in opposition to SPB's amended motion did not raise any procedural-due-process argument beyond the following footnote:

> While Rupp has now been served with [SPB's] motion in this matter, he maintains his position that proper procedure has not been followed in seeking to add a judgment debtor following entry of judgment. Without waiving this argument, Rupp relies on what is contained within Commonwealth's previous memorandum in opposition to [SPB's] motion on this issue.

4

This footnote, which contains no citations to legal authority, is the only mention Rupp made to the district court about a purported procedural defect in SPB's amended motion. In fact, when the parties appeared before the district court for a hearing in August 2023, Rupp failed to assert that amending the judgment would be procedurally improper or that doing so would violate due process. Instead, the parties argued the merits of SPB's request that the district court pierce the corporate veil and add Rupp as judgment debtor. Not surprisingly, the district court's memorandum accompanying its order on SPB's motion to amend the judgment did not consider any procedural-due-process claim by Rupp.

"A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted); *see also Michaels v. First USA Title, LLC*, 844 N.W.2d 528, 532 (Minn. App. 2014) (citing *Thiele* and stating that "[w]e . . . only review legal questions that the record demonstrates were actually raised in, and decided by, the district court"). Because Rupp presented no procedural-due-process argument to the district court in response to SPB's amended pleadings, and because the district court did not consider it, we conclude that the claim is forfeited and therefore decline to address it. *See Stone v. Invitation Homes, Inc.*, 4 N.W.3d 489, 493-95 (Minn. 2024) (rejecting as forfeited an appellant's attempt to raise a legal argument for the first time on appeal).

**II.** **The district court did not abuse its discretion in piercing the corporate veil and adding Rupp as judgment debtor.**

Rupp contends that the district court improperly pierced the corporate veil. He asserts that there was insufficient evidence to support the district court's decision that Commonwealth was not run as a corporation. Rupp also argues that, because SPB entered a commercial transaction with Commonwealth knowing that Rupp was not going to guarantee Commonwealth's obligations, there is no element of injustice to SPB. In response, SPB maintains that the district court's decision to add Rupp as judgment debtor is supported by the evidence, the factors set forth in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979), and the need to avoid a fundamental injustice. SPB has the better argument.

The district court "may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity." *Equity Tr. Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. App. 2009) (citing *Victoria Elevator*, 283 N.W.2d at 512) (other citation omitted). Courts use a two-prong test to determine whether a party is the alter ego of an entity. *Id.* at 339-41. At the first prong of the test, "courts look to the reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." *Id.* at 339 (quoting *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)). As elaborated on below, there are eight "alter ego" factors relevant to this inquiry. *Id.* "The second prong of the test requires a showing that piercing of the corporate veil is necessary to avoid injustice or fundamental unfairness." *Id.* at 340.

6

"Piercing the corporate veil is an equitable remedy that is intended to avoid injustice." *Aaron Carlson Corp. v. Cohen*, 933 N.W.2d 63, 69 (Minn. 2019). "A district court's exercise of its equitable powers is reviewed for an abuse of discretion." *Cole*, 766 N.W.2d at 339; *see also Nadeau v. Ramsey Cnty.*, 277 N.W.2d 520, 524 (Minn. 1979) ("Granting equitable relief is within the sound discretion of the [district] court. Only a clear abuse of that discretion will result in reversal."). "The factual findings made in support of the decision to pierce are reviewed for clear error on appeal." *Cole*, 766 N.W.2d at 339 (citing Minn. R. Civ. P. 52.01). "[T]he clear-error standard does not contemplate a reweighing of the evidence, inherent or otherwise; it is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021)

We next address each prong of the *Victoria Elevator* test in turn.

**A.    "Alter Ego" Factors**

As to the first *Victoria Elevator* prong, eight factors guide our analysis of whether a corporation or LLC is an "alter ego" or "mere instrumentality": (1) "insufficient capitalization for purposes of corporate undertaking"; (2) "failure to observe corporate formalities"; (3) "nonpayment of dividends"; (4) "insolvency of debtor corporation at time of transaction in question"; (5) "siphoning of funds by dominant shareholder"; (6) "nonfunctioning of other officers and directors"; (7) "absence of corporate records"; and (8) "existence of corporation as merely facade for individual dealings." *Id.* (quotation omitted).

Here, the district court made factual findings on several of the "alter ego" factors and determined that "Rupp's relationship, as the sole shareholder, with Commonwealth, the corporate entity, resembles something more akin to the operator of a shell game at an old-time carnival than a president of a corporate entity." As explained below, based on our review of the record and application of the eight "alter ego" factors, we conclude that the district court's factual findings were not clearly erroneous and that the district court did not abuse its discretion in determining that Commonwealth is an alter ego of Rupp.

### 1.    Insufficient Capitalization for Purposes of Corporate Undertaking

The district court found that, "[b]y design, Commonwealth is and was undercapitalized for corporate undertaking" because "[i]t is capitalized only to the extent that . . . Rupp wants it to be capitalized." This finding is not clearly erroneous because it is supported by the record.

Rupp testified during his deposition that he contributed "close to $3 million over the years into Commonwealth to cover its operating costs" and that there were "substantial losses every year throughout the history of the company." Rupp admitted that Commonwealth "never earned any money from third parties" and "was never a business that provided services to any other entity or any other individual." Rupp stated that Commonwealth "was never intended to have anything," that "[i]t never had anything[,]" and that "[i]t doesn't have anything." Rupp also testified that Commonwealth had no ownership interests in either real estate or another business entity.

8

Considering the foregoing, the district court did not clearly err in finding that Commonwealth was insufficiently capitalized for purposes of corporate undertaking and did not abuse its discretion in determining that this factor favors piercing the corporate veil.

## 2.      Failure to Observe Corporate Formalities

The district court found that Commonwealth's business filings were current with the Minnesota Secretary of State, but still determined that "other corporate formalities were lacking, such as proper documentation and corporate records related to purported loans between Rupp and Commonwealth." This finding is grounded in the evidence before the district court.

The record reflects that Commonwealth accounted for the money it received not as revenue but as personal loans from Rupp, who was Commonwealth's sole shareholder. No formal loan agreements or other documentation existed. Commonwealth owed $2.7 million to Rupp personally and never made a payment on any of its "loans" from Rupp. According to Rupp's deposition testimony, Commonwealth dealt solely with the administration and bookkeeping of Rupp's LLCs and never earned any money from third parties. "[R]ather than each of [his] assets and businesses hiring their own bookkeeper, [Rupp] would just have a couple of people, maybe as many as three," and he "would take money from all of [his] various enterprises and pay them, rather than employing them individually at each one of [his] enterprises."

Rupp also testified about personal vehicles that Commonwealth insured and for which Commonwealth held title. These vehicles included an Aston Martin and three Mercedes station wagons. Rupp explained that the Aston Martin was his personal vehicle

9

and that it was titled in Commonwealth's name to reduce Rupp's insurance costs. Rupp also stated that his wife's Tesla was titled in Commonwealth's name and that his ex-wife's Mazda Miata had remained titled in Commonwealth's name for 20 years. Rupp admitted that he "always tried to have corporate ownership of assets that might expose [him] to some liability. Cars being an example."

This record evidence persuades us that the district court did not clearly err in finding that Commonwealth failed to observe corporate formalities and did not abuse its discretion in determining that this factor favors piercing the corporate veil.

### 3. Nonpayment of Dividends

The district court found that "no dividends were ever issued" by Commonwealth. This finding aligns with the evidence before the district court: Rupp agreed that Commonwealth never paid a dividend because Commonwealth's main source of funds was the money that Rupp loaned to the company. As a result, the district court did not clearly err in finding that Commonwealth did not issue any dividends and that this factor favors piercing the corporate veil.

### 4. Insolvency of Debtor Corporation at Time of Transaction in Question

Although the district court noted that Commonwealth "is allegedly insolvent," it did not make any specific finding about Commonwealth's solvency when Commonwealth and SPB entered into the commercial lease agreement.

In his deposition testimony, Rupp stated that, as of 2021, Commonwealth was insolvent and no longer had employees. Rupp also admitted that he assumed personal

responsibility for Commonwealth's debts and that Commonwealth was generally unable to pay on its obligations as they became due unless he personally provided the funds. Rupp further testified that Commonwealth "didn't have any assets," never had any ownership interest in real estate, and did not have an ownership interest in another business entity.

Despite the lack of evidence supporting a finding that Commonwealth was insolvent when Commonwealth and SPB executed the commercial lease agreement, the record as a whole suggests that this factor is, at most, neutral. We conclude that any question about Commonwealth's insolvency at the time of its commercial lease agreement with SPB does not suggest that the district court abused its discretion in piercing the corporate veil.

### 5. Siphoning of Funds by Dominant Shareholder

Although the district court made no explicit finding that Commonwealth had suffered siphoning of funds by a dominant shareholder, the district court did find that Rupp "was Commonwealth's sole financial decisionmaker and he dictated how funds were transferred and managed at his business entities." The district court also found that "Commonwealth routinely paid expenses for Rupp's other entities." These findings are supported by Rupp's deposition testimony.

Rupp testified that Commonwealth was "a paymaster for a lot of expenses" and agreed that Commonwealth regularly made payments for Rupp's other businesses and their employees. Rupp stated that Commonwealth paid expenses for his properties, such as insurance on automobiles. Commonwealth's checking account was the source of these funds.

11

That said, "[n]o siphoning of assets occurs if the transactions are for fair consideration." *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 868 (Minn. 1981). But nothing in the record suggests that Commonwealth received fair consideration for the services it provided to Rupp's other businesses. In fact, Rupp said that his other LLCs did not pay Commonwealth directly for its services. Instead, if Commonwealth was "short on money" and Rupp had "received a distribution from one of [his] companies . . . then [he] in turn would contribute money to cover the expenses at Commonwealth, as opposed to an entity directly making a loan or covering an expense."

This evidence amply supports the district court's factual findings, which in turn imply that Rupp—Commonwealth's sole owner and shareholder—siphoned funds from Commonwealth. But even assuming no such implied finding, the relevant facts in the record pertaining to this factor do not reflect that the district court abused its discretion in piercing the corporate veil.

### 6.     Nonfunctioning of Other Officers and Directors

The district court found that "[t]here were . . . no other officers or directors" and that "Rupp was both the sole shareholder and sole financial decisionmaker for Commonwealth." The district court's findings are well founded in the record.

Although Rupp testified at his deposition that Commonwealth "could have" had other officers at some point, that his wife might have had an officer position, and that she may have received a payroll check from the company, his memory was ultimately imprecise. On appeal, Rupp makes no claim that Commonwealth had any other officers and instead asserts that he "was a functioning officer[,]" that "Commonwealth was a close

12

corporation," and that his "active performance as an officer of Commonwealth is not inconsistent with how a close corporation operates." But this argument ignores the very premise of this factor: the nonfunctioning of *other* officers or directors.

We therefore discern no clear error in the district court's finding that Commonwealth did not have other officers and directors. The district court did not abuse its discretion in determining that this factor favors piercing the corporate veil.

### 7. Absence of Corporate Records

It is unclear whether the district court weighed an absence of corporate records in favor of piercing the corporate veil. But the district court did make several findings relevant to this factor, which are consistent with the record evidence.

The district court found that Commonwealth "filed tax returns and maintained some financial records." This finding is supported by Rupp's deposition testimony. But the district court also found that "the accuracy of the tax returns and financial records [was] in dispute." This finding also reflects Rupp's testimony. For example, Commonwealth's 2017 tax returns state that Commonwealth owned stock in W.A. Frost, a corporation of which Rupp is sole shareholder, and which owns a restaurant. But Rupp admitted that Commonwealth "did not own W.A. Frost stock at the end of 2017." The district court also found that Commonwealth "has no records of any executive meetings, board meetings, or officer meetings." This finding accords with Rupp's testimony that Commonwealth never had any such meetings because he was the sole owner "with no board and no other officers." As a result, the record shows that Commonwealth did not have any meeting minutes.

Although the evidence before the district court demonstrated that Commonwealth did have corporate records, the evidence also reveals that the accuracy of those records is highly dubious. This factor is therefore neutral and does not suggest that the district court abused its discretion in piercing the corporate veil.

**8.    Existence of Corporation as Merely Facade for Individual Dealings**

The district court did not expressly address whether Rupp used Commonwealth as merely a facade for his individual dealings by, for example, commingling finances and inappropriately spending the corporation's money. *See Urban ex rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 161 (Minn. App. 2005) (explaining that a party can meet this factor by providing evidence of commingling finances and improperly raiding and using corporate funds), *aff'd on other grounds*, 723 N.W.2d 1 (Minn. 2006); *see also Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1081 (D. Minn. 2013) (citing *Urban* and stating that "[c]ircumstances indicative of this factor include commingling of personal and corporate finances, corporate property securing individual loans, or selling corporate assets to satisfy personal debts"). Even so, evidence in the record relevant to this factor shows that the district court did not abuse its discretion by piercing the corporate veil.

In his deposition testimony, Rupp explained that Commonwealth dealt with the administration and bookkeeping for Rupp's LLCs and never earned any money from third parties. Rather than require his individual businesses to have their own bookkeepers, Rupp paid Commonwealth bookkeepers with funds he acquired from his other enterprises and had Commonwealth provide such services. And Rupp testified that Commonwealth might

14

have also "had an employee [who] cut grass at various locations and a building engineer [who] wandered around and made mechanical repairs . . . on all the properties."

Rupp stated that Commonwealth went out of "active business" when it ran out of Paycheck Protection Plan (PPP) funds. Rupp later moved Commonwealth's bookkeeper and controller to another company. At the end of 2019, Rupp's other businesses were shrinking, which affected his ability to fund Commonwealth and to pay the rent Commonwealth owed to SPB. Rupp admitted that Commonwealth would have no way to pay back its PPP loan unless he contributed the money.

Although Rupp testified that his business is "the acquisition[,] . . . renovation[,] and repositioning of historic properties of various kinds," Rupp mainly used Commonwealth to manage his other entities and to pay his employees. Rupp acknowledged that Commonwealth insured personal vehicles that belonged to him, his wife, and his ex-wife. Rupp also testified that he assumed personal responsibility for a $90,000 loan paid to Commonwealth by one of his friends. Rupp stated that, in return for transferring several automobiles valued at less than the $90,000 to another company that he owned, Rupp agreed to pay back the loan. This transaction evinces commingling of personal and corporate finances. Based on such record evidence, the existence of Commonwealth as merely a facade for individual dealings supports the district court's decision to pierce the corporate veil.

We therefore conclude that the district court did not abuse its discretion in determining that the first *Victoria Elevator* prong is satisfied.

15

**B.      Element of Injustice or Fundamental Unfairness**

As discussed above, the second *Victoria Elevator* prong "requires a showing that piercing of the corporate veil is necessary to avoid injustice or fundamental unfairness." *Cole*, 766 N.W.2d at 340. "[D]oing business as a corporation to limit personal liability is not wrong; it is a major reason for incorporating." *Davis v. Johnson*, 415 N.W.2d 755, 758-59 (Minn. App. 1987) (citing *Victoria Elevator*, 283 N.W.2d at 512). "To satisfy this portion of the test, 'proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented.'" *Groves v. Dakota Printing Servs., Inc.*, 371 N.W.2d 59, 62-63 (Minn. App. 1985) (quoting *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982)). Thus, "[t]he second prong of the test examines the relationship of the plaintiff to the corporation." *White*, 322 N.W.2d at 608.

Here, despite "acknowledg[ing] that the parties are sophisticated and entered into a commercial transaction in which . . . [SPB] rented office space to [Commonwealth]," the district court determined that SPB "satisfied the second prong" because "it is unfair to allow [Rupp] to avoid payment to [SPB] of the judgment." In support of its determination, the district court found that "Rupp has assets, including some that were transferred from Commonwealth to himself and/or other associates and entities during this litigation[.]" This finding is supported by Rupp's deposition testimony: Rupp admitted that he transferred ownership of a Mercedes station wagon from Commonwealth to one of his other businesses in late winter or early spring of 2021.

16

The district court also found that, "when Commonwealth entered into the lease with [SPB] in 2018, . . . Rupp knew that he would be personally paying money into Commonwealth to pay its rent and that if he stopped personally paying money into Commonwealth, Commonwealth would have no way to pay rent to [SPB]." This finding tracks Rupp's deposition testimony. When asked if Commonwealth paid rent to SPB for the use of the ninth and tenth floors of the Saint Paul Building before Rupp sold the company to a third party in 2018, Rupp responded: "Well . . . maybe as a fiction, because . . . I owned the building, and the money that came from the rent came from me. It was circular." Rupp also testified that he personally negotiated the terms of the September 2018 commercial lease agreement between Commonwealth and SPB. And, as noted earlier, Rupp admitted that he assumed personal responsibility for Commonwealth's debts and that Commonwealth was generally unable to pay on its obligations as they became due, unless he personally provided the funds.

The district court did not abuse its discretion in determining that piercing the corporate veil is necessary to avoid fundamental unfairness to SPB. Under these specific circumstances, allowing Rupp to escape payment of a $443,166.29 judgment to which he stipulated as Commonwealth's sole owner and shareholder is neither just nor fair. Indeed, Rupp's conduct is analogous to the shareholder defendant in *Victoria Elevator*, who "did not treat the corporation as a separate entity" but rather "lent it the use of his money and property—sometimes calling it a loan, sometimes calling it a transfer of assets, rarely making a formal record of the transaction." 283 N.W.2d at 513. As in *Victoria Elevator*,

"to allow an individual to escape liability because he does his business under a corporate form is to allow him an advantage he does not deserve." *Id.* at 512.

In sum, we discern no clear error in our review of the district court's factual findings, and we conclude that the district court did not abuse its discretion in exercising its equitable powers by piercing the corporate veil and adding Rupp as judgment debtor.

**Affirmed.**