**HOYT PROPERTIES, INC., et al., Appellants,**

v.

**PRODUCTION RESOURCE GROUP, L.L.C., et al., Respondents.**

No. A05–1293.

Court of Appeals of Minnesota.

June 20, 2006.

Review Granted Aug. 23, 2006.

George G. Eck, Andrew Holly, Dorsey & Whitney LLP, Minneapolis, MN, for appellants.

Thomas H. Boyd, Karl E. Robinson, Winthrop & Weinstine, P.A., Minneapolis, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and COLLINS, Judge.*

## OPINION

LANSING, Judge.

This appeal from summary judgment involves three claims that are grounded on allegations of fraudulent inducement in the settlement of commercial-lease litigation. The lessor, Hoyt Properties, Inc., sued the lessee and its parent company, Production Resource Group, L.L.C. (PRG), for breach of contract, piercing the corporate veil, and rescission of the settlement agreement. The district court granted summary judgment dismissing all three claims and directed immediate entry of final judgment. The district court denied PRG's motion to dismiss for failure to join an indispensable party but granted its motion to dismiss with prejudice Hoyt's amended claims for agency liability, fraud, and negligent misrepresentation. We conclude that Hoyt did not fail to join an indispensable party and that the district court did not abuse its discretion by denying PRG's motion to dismiss on that ground. But we conclude that the district court erred by dismissing Hoyt's original and amended claims, and we therefore reverse and remand.

## FACTS

Hoyt Properties, Inc. and Hoyt/Winnetka, L.L.C. (collectively Hoyt), are Minnesota corporations engaged in the real-estate business. Steve Hoyt, an attorney, owns and operates Hoyt. Haas Multiples Environmental Marketing & Design, Inc. (Haas), is a Minnesota corporation active in the trade-show business, and Entolo, Inc., is the successor corporation to Haas. Production Resource Group, L.L.C. (PRG), is Haas/Entolo's parent corporation. PRG liquidated Haas/Entolo in 2003 but did not dissolve either corporation.

### The Lease and the GMAC Agreement

In 2001 Hoyt Properties and Haas entered into a ten-and-one-half-year lease agreement for office and warehouse space. The lease required Haas to pay approximately $10 million dollars in rent over the term of the lease. Before Haas took possession of the property, it assigned all of its rights and duties under the lease to Entolo, Inc. Hoyt Properties later assigned its rights and duties under the lease to Hoyt/Winnetka, L.L.C.

In connection with the lease, Hoyt and GMAC Business Credit, L.L.C., PRG's and Entolo's lender, entered into an agreement that limited Hoyt's interest in any collateral Entolo stored on the leased premises if Entolo should default on the lease. The agreement also recognized that GMAC's security interest in Entolo's assets had priority over Hoyt's interest. Entolo defaulted on the lease in December 2002.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

### The Settlement Agreement

After Entolo defaulted on the lease, Hoyt filed an eviction action. At the hearing in December 2002, the parties negotiated a settlement agreement that would allow Entolo to occupy a portion of the leased premises for two months in exchange for approximately $104,000 in rent. Although the agreement resolved the issue of occupancy, Hoyt expressly retained the right to sue Entolo for the remaining sums due under the lease.

According to Hoyt's allegations, during the negotiations, PRG's attorneys told Hoyt that PRG wanted a release. In response to Hoyt's inquiry about the reason for the release, PRG's attorney indicated that PRG did not want to get sued after the fact. Steve Hoyt replied, "Well, that would be piercing the veil . . . I don't know of any reason why [PRG] could be liable, do you?" One of PRG's attorneys allegedly responded, "There isn't anything. PRG and Entolo are totally separate." Steve Hoyt then walked over to his attorney and authorized him to insert a "global" release into the settlement agreement. Steve Hoyt testified in his deposition that he agreed to the release based on the representations of PRG's attorney.

A few months after Hoyt signed the release, Steve Hoyt learned that Bruce Knight, who was employed by Entolo after the entity acquired Knight's trade-show-design business, had brought a breach-of-contract action against Entolo and a piercing-the-corporate-veil claim against PRG. Steve Hoyt confirmed that the complaint had been served before Hoyt's settlement agreement with PRG. The complaint contained detailed allegations of PRG's control of Entolo's daily business and financial affairs and further alleged that Entolo had been operated as a mere instrument of PRG.

Steve Hoyt additionally discovered that, to refinance a debt offering on which it had defaulted, PRG entered into two loan agreements with GMAC. The first was a $50 million term loan, to be repaid over time. The second was an $80 million revolving loan. PRG had Entolo sign as a guarantor and pledge its assets to secure the loans. PRG then arranged for the transfer of all Entolo's cash and accounts receivable to PRG and essentially operated Entolo as a division of PRG.

### Current Litigation

Based on the information about PRG's conduct of Entolo's operations and the litigation that was pending before the settlement agreement, Hoyt concluded that PRG's attorney falsely represented that "[t]here isn't anything [about a veil-piercing claim]" and that PRG and Entolo were "totally separate." Hoyt brought this action against PRG and Entolo, seeking to rescind the settlement agreement.

Count I of Hoyt's complaint alleges a claim against Entolo for breach of the lease agreement and a claim against PRG under a piercing-of-the-corporate-veil theory. Because Haas and Entolo, the defaulting lessees, have no assets, Hoyt can only recover for a breach if PRG is directly liable.

Count II of the complaint seeks rescission of the settlement agreement that provides PRG a release from liability. Hoyt alleges that the release is void because it was induced by the representation of PRG's attorney that "[t]here isn't anything [to a veil-piercing claim]" and his representation that PRG and Entolo were "totally separate." Hoyt also offered to tender back the consideration it received under the agreement.

Count III of the complaint alleges fraud in Entolo's transfer of cash and other assets to PRG after PRG acquired Entolo.

The district court granted Hoyt leave to amend its complaint to add a claim for agency liability (count IV) and a claim for fraud and negligent misrepresentation (count V). In allowing the amendment, the district court reasoned that the new claims were important and not "far off the course of prior discovery and that, although the claims may not ultimately succeed, they were supported by the facts alleged in the complaint." Hoyt never filed or served the amended complaint.

After the case was removed to federal court and then remanded to state court, PRG filed a motion to dismiss for failure to join GMAC as an indispensable party. The district court denied the motion. PRG then moved for summary judgment on Hoyt's rescission and veil-piercing claims. The district court granted the motion, concluding that, because the representations by PRG's counsel to Steve Hoyt constituted a legal opinion rather than a factual representation, Hoyt's rescission claim was not viable. The district court also concluded that Hoyt did not reasonably rely on counsel's representation.

Having dismissed Hoyt's rescission claim, the district court then dismissed Hoyt's veil-piercing claim, reasoning that the claim was barred by the provision in the settlement agreement releasing PRG from liability. Even though PRG had not moved to dismiss Hoyt's breach-of-contract claim against Entolo, the district court also dismissed that claim. Finally, the court dismissed the fraudulent-transfer claim. But the court concluded that the amended claims for agency liability, fraud, and negligent misrepresentation remained viable and set them for trial.

The district court then issued an order for the immediate entry of a final judgment of dismissal, noting that there was no just cause for delay. In an apparent effort to facilitate an interlocutory appeal, the court later issued an amended order, dismissing with prejudice and on the merits "[a]ll remaining claims that [Hoyt] did assert or could otherwise have asserted." Hoyt appeals the summary-judgment dismissal of the original and the amended complaints.

## ISSUES

I.  In the absence of a motion and the presence of a provision in the settlement agreement expressly reserving Hoyt's right to sue Entolo for the amounts remaining under the lease, did the district court err by granting summary judgment dismissing Hoyt's breach-of-contract claim against Entolo?

II.  Did the district court err by concluding that the representations of PRG's attorney were nonactionable statements of opinion on which Hoyt could not have reasonably relied and by granting summary judgment dismissing Hoyt's claim for rescission of the settlement agreement?

III.  Did the district court err by granting summary judgment dismissing Hoyt's claim to rescind the settlement agreement, based on its determination that the complaint set forth a claim for partial rescission?

IV.  Did the district court abuse its discretion by dismissing with prejudice counts IV and V of Hoyt's amended complaint, when Hoyt had sought dismissal of those claims without prejudice under Minn. R. Civ. P. 41(a), to obtain an appealable final judgment?

V.  Did the district court abuse its discretion by denying PRG's motion to dismiss for failure to join GMAC?

## ANALYSIS

### I

On appeal from a district court's decision to grant summary judgment, we consider whether genuine issues of material fact exist and whether the court erred in its application of the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the nonmoving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■ Hoyt contends that the district court erred by dismissing its breach-of-contract claim against Entolo. For two reasons, we agree. First, we are unable to find a basis for the district court's statement that the breach-of-contract claim is barred by the settlement agreement. To the contrary, the settlement agreement specifically *reserves* Hoyt's claims against Entolo. Second, PRG did not move for summary judgment on Hoyt's breach-of-contract claim against Entolo. PRG expressly notes in its motion papers that the motion does not include the breach-of-contract claim against Entolo.

PRG does not dispute that the settlement agreement preserves Hoyt's right to sue Entolo or that PRG did not move for summary judgment on the breach-of-contract claim against Entolo. Instead, PRG argues that, because Hoyt consistently represented to the district court that its breach-of-contract claim against Entolo was "inextricably intertwined with and contingent upon" its veil-piercing claim against PRG, the dismissal of the claim was the natural consequence of enforcing the release of PRG under the settlement agreement. But the interrelationship of the claims does not provide a basis for dismissal or for granting unrequested relief. And although PRG persuasively argues that Entolo's lack of assets may prevent Hoyt's ultimate recovery against Entolo, this argument similarly fails to provide a legal basis for summary judgment dismissing the claim.

PRG also argues that, because Hoyt did not bring a rule 60 motion for reinstatement of its claim against Entolo, it may not challenge the dismissal on appeal. We are not persuaded by this argument. PRG cites no authority for the proposition that a rule 60 motion is a prerequisite for an appeal from the summary-judgment dismissal of a claim. Furthermore, Hoyt is not contending that the judgment is invalid for reasons that are remedied by a rule 60 motion. *See* Minn. R. Civ. P. 60.01, 60.02 (providing for relief from final judgment because of mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud). We therefore conclude that the district court erred by dismissing Hoyt's breach-of-contract claim against Entolo.

### II

Hoyt next argues that the district court erred by dismissing its rescission claim based on a determination that the representations of PRG's attorney were legal opinions and that, as a matter of law, Hoyt could not have reasonably relied on them. Hoyt argues that, at a minimum, the representations are actionable statements of law that imply knowledge of facts. Hoyt further argues that it reasonably relied on the representations.

### Representations

■ PRG's attorney allegedly made two representations to Steve Hoyt. First, the attorney stated that "[t]here isn't anything [to a veil-piercing claim]." Next, he stated that PRG and Entolo "were totally separate."

■ Although abstract statements of law or pure legal opinions are not actionable, statements of law that imply knowl-

edge of facts are actionable. *Miller v. Osterlund*, 154 Minn. 495, 496, 191 N.W. 919, 919 (1923) (stating that misrepresentation involving legal matter is actionable "if it amounts to an implied assertion that facts exist that justify the conclusion of law which is expressed"); *see also Nodak Oil Co. v. Mobil Oil Corp.*, 533 F.2d 401, 406–07 (8th Cir.1976) (stating that representation about legal effect of facts not disclosed was actionable because it implied facts existed that substantiated statement). Thus the question presented is whether Hoyt has established that the alleged statements asserted or implied knowledge of facts not disclosed or otherwise known to Steve Hoyt.

PRG's first alleged representation was that "[t]here isn't anything [to support a veil-piercing claim]." This statement implied knowledge of facts that substantiated the representation. Whether Hoyt had a viable veil-piercing claim depended not on legal abstractions but on whether PRG and Entolo functioned as a single business entity as a matter of fact. The attorney's response therefore implied that the factual elements necessary to establish the claim did not exist, and Steve Hoyt justifiably interpreted the response as a factual negation of a claim that PRG and Entolo functioned as a single business entity.

Our determination that the attorney's statement implied knowledge of facts is consistent with precedent. In *Miller*, for example, the company stated that it had the right to issue insurance in Minnesota. *Miller*, 154 Minn. at 496, 191 N.W. at 919. The statement turned out to be false, and plaintiff sued for misrepresentation. *Id.* The supreme court held that although the statement amounted to a legal conclusion, it was actionable because it implied that "the company ha[d] complied with the well-known requirements of our laws" and was therefore able to sell insurance in Minnesota. *Id.* at 497, 191 N.W. at 919. Like the statement in *Miller*, the statement of PRG's attorney that "[t]here isn't anything [to a veil-piercing claim]" implied that no facts existed that would support such a claim.

Our determination that the attorney's representation implied knowledge of facts is also supported by the district court's finding that the statements amounted to an assertion that "PRG and Entolo are separate corporations that have maintained separate boundaries and formalities and, therefore, are not vulnerable to piercing claims." The representation that PRG and Entolo were separate corporations that functioned with separate structures and with separate boundaries is a direct factual assertion. The district court's finding is therefore inconsistent with its determination that the representation was a nonactionable statement of opinion.

Finally, the district court's conclusion that PRG's attorney had no legal or ethical duty to concede that his client's adversaries might have a winning claim does not make the attorney's representation nonactionable. The attorney, indeed, had no duty to concede that his client's adversaries had a winning claim; but once he chose to respond to Steve Hoyt, he had a duty to be truthful. *See, e.g., Safeco Ins. Co. of Am. v. Dain Bosworth, Inc.*, 531 N.W.2d 867, 871 (Minn.App.1995) (stating that party who chooses to speak must speak truthfully, even in absence of duty to speak); *see also Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972) (stating that, when party speaks, party must disclose sufficient information to avoid misleading another). The lack of an ethical duty to concede a claim does not therefore support the district court's determination that the attorney's statement that "[t]here isn't anything [to a veil-piercing claim]" was not actionable.

PRG's second alleged misrepresentation was its statement that PRG and Entolo are "totally separate." Hoyt argues that this statement is a purely factual assertion about the relationship between PRG and Entolo. Specifically, Hoyt asserts that the representation may reasonably be interpreted to mean that, as a matter of fact, PRG did not dominate Entolo's affairs and allowed Entolo to operate as a distinct and separate corporate entity. We agree. Unlike the veil-piercing representation, which makes reference to a legal concept, the representation by PRG's attorney that PRG and Entolo were "totally separate" is entirely a representation of fact. *See Simonsen v. BTH Properties*, 410 N.W.2d 458, 461 (Minn.App.1987) (concluding that representation that building was six-unit building when use as six-unit building violated applicable zoning ordinance was actionable as representation of fact), *review denied* (Minn. Oct. 26, 1987).

For these reasons, we conclude that the district court erred by dismissing Hoyt's rescission claim based on the court's determination that the representations of PRG's attorney were nonactionable statements of opinion.

### Reliance

■ Hoyt next argues that the district court erred by concluding that, as a matter of law, Steve Hoyt unreasonably relied on the representations of the opposing attorney in a negotiating setting and acted unreasonably by not committing the representations to writing. We conclude that whether Hoyt reasonably relied on the attorney's representations raises a genuine issue of material fact for trial, which precludes summary judgment on Hoyt's rescission claim.

■ To state a claim for fraudulent misrepresentation, a party must establish that it reasonably relied on a fraudulent representation. *Davis v. Re–Trac Mfg.,*

*Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). A party's reliance is reasonable unless the party is on notice that the representation is not to be trusted or knows or has reason to know that the representation is false. *Spiess v. Brandt,* 230 Minn. 246, 253, 41 N.W.2d 561, 566 (1950) (stating that "in a business transaction the recipient of a fraudulent misrepresentation ... is justified in relying upon its truth, although he might have ascertained its falsity had he made an investigation"); Dan Dobbs, *The Law of Torts* § 475 (2001). Reliance is generally a question of fact. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995); *see also Placke v. White–Price Co.,* 179 Minn. 147, 150, 228 N.W. 554, 555 (1930) (noting that whether experienced businessperson was justified in relying on defendant's representations was question for jury).

■ The district court concluded that Steve Hoyt's reliance was unreasonable as a matter of law because PRG's attorney was engaged in adversarial negotiations. But an "attorney who makes affirmative misrepresentations to an adversary ... may be liable for fraud." *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn.1989). A party may reasonably rely on representations made by an adverse party, unless the falsity of the representation is obvious. *Restatement (Second) of Torts* § 541A (stating that "recipient of a fraudulent misrepresentation of fact may be justified in relying upon it although he believes the maker to have an adverse interest in the transaction"), cmt. a (1977) (stating that "recipient [of representation made by adverse party] is entitled to assume that a representation of fact ... is honestly made, unless its falsity is obvious to his senses").

■ The district court also concluded that, because Steve Hoyt had extensive business experience, his reliance on this statement would be unreasonable as a matter of law. But an experienced businessperson is entitled to rely on statements by an opposing party to a transaction, unless his or her experience makes the truth or falsity of the representation apparent. *Berg v. Xerxes–Southdale Office Bldg. Co.*, 290 N.W.2d 612, 616 (Minn. 1980); *Placke*, 179 Minn. at 150, 228 N.W. at 555. The current record contains no indication that Steve Hoyt's business experience made the truth or falsity of the attorney's representations apparent.

■ Finally, the district court concluded that Steve Hoyt's failure to include the representations in the settlement agreement, even though it was his general practice to incorporate all material terms in an agreement, established that he did not reasonably rely on the representations. But under Minnesota law, a fraudulent misrepresentation can void a contract even though the misrepresentation was not included in the contract. *Ganley Bros. v. Butler Bros. Bldg. Co.*, 170 Minn. 373, 375, 212 N.W. 602, 602 (1927) ("A contract resting on [oral] fraud, when under attack, cannot stand. The fact that the contract has been reduced to writing does not change the rule."); *see also Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 (8th Cir.1990) (stating that party may rely on misrepresentation even if not in contract's language). Hoyt's failure to include the attorney's representations in the settlement agreement does not therefore render its reliance unreasonable as a matter of law.

Ultimately, reliance is a jury question. The record contains testimony from which a jury could reasonably conclude that Steve Hoyt's reliance was reasonable. Steve Hoyt testified that he agreed to release PRG based on the representations of PRG's attorney that there was no basis for a veil-piercing claim. He also indicated that he relied on the attorney's representation on the assumption that attorneys have an ethical obligation to tell the truth. *See* Minn. R. Prof. Conduct § 4.1 ("In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law."). A jury could reasonably conclude that because attorneys have a professional duty not to make false assertions, even to adversaries, Steve Hoyt's reliance was reasonable. *See Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 703 (2003) (recognizing that attorney's ethical duty justifies reliance on opposing counsel's statements). A genuine issue of material fact thus remains for trial, and the district court erred by granting summary judgment dismissing Hoyt's rescission claim.

### III

■ PRG argues that, even if Hoyt has a viable misrepresentation claim, Hoyt's rescission claim fails because Hoyt sought to rescind only part of the settlement agreement and Minnesota law does not allow partial rescission of a contract.

Under the settlement agreement, Hoyt released PRG from liability. In its complaint, Hoyt alleges that this release was fraudulently induced and seeks an order declaring that paragraph seven, which includes the release provisions, is null and void. Hoyt did not seek to invalidate other parts of the agreement, but it offered to return the consideration it received under the agreement.

In October 2003 PRG removed this action to federal court and filed a motion to dismiss. Among other things, PRG sought to dismiss Hoyt's rescission claim against PRG and Entolo because the complaint sought partial rescission, which Minnesota

does not recognize. When appearing in federal court on PRG's motion to dismiss, Hoyt indicated that it intended to rescind the entire agreement. In its report and recommendation, the federal court acknowledged that the original complaint sought rescission of only paragraph seven of the settlement agreement, but, construing the complaint liberally in the light most favorable to Hoyt, it concluded that Hoyt sought rescission of the entire agreement.

Like the federal court, we conclude that Hoyt's complaint, liberally construed in the light most favorable to Hoyt, alleges a cause of action for rescission of the entire agreement rather than only paragraph seven. *See Home Ins. Co. v. Nat'l Union Fire Ins.*, 658 N.W.2d 522, 535 (Minn.2003) (stating that "courts are to construe pleadings liberally"); *Wells Fargo Home Mortgage, Inc. v. Newton*, 646 N.W.2d 888, 899 (Minn.App.2002) (stating that "purpose of the complaint is to advise the defendant as to the nature of the plaintiff's claim" and that "[i]n determining whether a complaint states a claim, the test is whether the facts alleged, liberally construed, entitle plaintiff to any relief"). The district court therefore erred by dismissing Hoyt's rescission claim on the alternative ground that it was a nonviable claim for partial rescission.

Because the dismissal of Hoyt's veil-piercing claim was based on the district court's determination that the claim was barred by the release in the settlement agreement and we conclude that Hoyt's rescission claim is viable, we also reverse the dismissal of Hoyt's veil-piercing claim against PRG.

## IV

■ Hoyt next argues that the district court improperly dismissed with prejudice the claims in its amended complaint to facilitate an interlocutory appeal, after Hoyt noted its intent to dismiss those claims without prejudice under Minn. R. Civ. P. 41.01(a) and requested an order directing the entry of final judgment. PRG argues that the dismissal of Hoyt's claims with prejudice was necessary to satisfy Hoyt's request for an appealable final judgment.

■ The district court has wide discretion in determining whether to grant a plaintiff's motion for dismissal. *Willard v. Max A. Kohen, Inc.*, 202 Minn. 626, 628, 279 N.W. 553, 554 (1938). The court also has discretion to determine whether the dismissal should be with prejudice. *Falkenstein v. Braufman*, 251 Minn. 444, 452, 88 N.W.2d 884, 889 (1958). The district court did not explain the reasons for its dismissal of the amended claims. Because the district court did not address the merits of Hoyt's amended claims, however, we may reasonably assume that the court accepted PRG's claim that the dismissal of all claims with prejudice was necessary to obtain an appealable final judgment. This determination is contrary to the rules of civil procedure.

■ A judgment that adjudicates fewer than all of the claims in an action is immediately appealable if the district court makes an express determination that there is no just reason for delay and expressly directs the entry of judgment. Minn. R. Civ. P. 54.02; *First Nat'l Bank of Windom v. Rosenkranz*, 430 N.W.2d 267, 268 (Minn. App.1988). The district court has discretion on whether to make the express determination required for immediate review of a partial judgment. *Rosenkranz*, 430 N.W.2d at 268 (noting that district courts should authorize immediate appeals from partial judgments only when "substantial benefits to the parties in a particular case outweigh the general policy considerations against piecemeal review"). Absent this determination, a partial judgment is not

appealable until a final judgment adjudicating all remaining claims in an action is entered. *Id.*

The district court apparently determined that an immediate appeal from the partial judgment dismissing the original claims of the complaint was appropriate. The court's amended order for judgment therefore included an express determination that there was no just cause for delay and directed the immediate entry of judgment. The court's rule 54.02 determination was sufficient to make the partial judgment appealable. Contrary to PRG's claim, the dismissal of the claims in the amended complaint was not necessary to secure an appealable judgment. If the remaining claims were so intertwined with the dismissed claims that a rule 54.02 determination would have constituted an abuse of discretion, the solution was not to dismiss the remaining claims with prejudice but to wait until entry of a final judgment adjudicating those claims.

Because we can find no legal basis for the dismissal of Hoyt's remaining claims with prejudice, we conclude that the district court abused its discretion in this dismissal.

## V

■ PRG argues that, to the extent Hoyt seeks rescission of the entire settlement agreement, its rescission claim must be dismissed for failure to join GMAC as a party to this action. According to PRG, because GMAC was a party to the settlement agreement, it is a necessary and indispensable party in an action for rescission of the settlement agreement.

The district court concluded that GMAC's joinder was not necessary for a just adjudication of Hoyt's claims and denied PRG's motion to dismiss for failure to join. The district court did not abuse its discretion. *See Port Auth. v. Harstad,* 531 N.W.2d 496, 502 (Minn.App.1995) (stating that denial of motion to dismiss is subject to abuse-of-discretion standard), *review denied* (Minn. June 14, 1995).

■ An indispensable party is a party "without whom the action could not proceed in equity and good conscience." *Murray v. Harvey Hansen–Lake Nokomis, Inc.,* 360 N.W.2d 658, 661 (Minn.App. 1985). In deciding whether a party is indispensable, a court must balance several factors, including whether it can render an adequate judgment without the absent party and whether relief can be crafted that would not prejudice the absent party's rights. *See* Minn. R. Civ. P. 19.02; *Murray,* 360 N.W.2d at 661.

A person must be joined in an action if (1) in that person's absence, complete relief could not be accorded among the existing parties; or (2) the person claims an interest in the subject of the action and is so situated that a disposition of the action in the person's absence would impede the person's ability to protect that interest or leave a current party subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest. Minn. R. Civ. P. 19.01.

PRG entered into two loan agreements with GMAC. The agreements were secured by Entolo's assets. In connection with the lease agreement, Hoyt entered into a landlord's waiver and consent agreement with GMAC, under which Hoyt agreed to honor GMAC's secured interest in Entolo's property and recognized that GMAC's secured interest had priority. Hoyt also released all claims against GMAC in the settlement agreement. In turn, GMAC released the right to cure Entolo's default and the right to remain on the premises for up to 180 days after Entolo defaulted.

PRG argues that GMAC is a necessary and indispensable party in any action for rescission of the settlement agreement because it was a party to the settlement agreement. PRG cites numerous cases for the proposition that all parties who may be affected by the determination of an action are indispensable and must be joined, particularly when the action is one for rescission of a contract to which the unnamed person is a party. But PRG has not explained why GMAC must become a party to this action—in other words, PRG has not identified what rights or interests of GMAC under the settlement agreement are implicated by Hoyt's action such that equity requires that GMAC be joined.

Hoyt, by contrast, convincingly argues that, because GMAC's rights or obligations under the settlement agreement have long since been fulfilled, nothing can be gained by adding GMAC. First, GMAC agreed in the settlement agreement that Entolo could pay the short-term rent to Hoyt out of the proceeds of the sale of Entolo's property, in which GMAC had a secured interest. Entolo's property has been sold and the rent has been paid. No existing GMAC interest is therefore implicated by paragraph one of the agreement.

Second, Hoyt released all claims against GMAC in the settlement agreement. Because Hoyt has no current claims against GMAC either under the settlement agreement or in connection with this action, PRG's concern that GMAC might be subject to a lawsuit by Hoyt is unfounded. Furthermore, any judgment could include a release of claims against GMAC.

Finally, in the settlement agreement GMAC released its rights under paragraph six of the waiver and consent agreement in the event Entolo defaulted on the lease, and Hoyt agreed that GMAC would not be liable for any of Entolo's unperformed obligations under the lease. Because Entolo has long-since defaulted on the lease and left the premises and because the collateral in which GMAC had an interest has long been sold, paragraph six of the waiver and consent agreement no longer provides any obligation or rights to GMAC that might be affected by the rescission of the settlement agreement. Nothing in the agreement therefore requires the joinder of GMAC.

Because Hoyt sought no relief against GMAC and GMAC did not seek to be added as a party, the district court did not abuse its discretion by denying PRG's motion to dismiss Hoyt's complaint for failure to join GMAC.

## DECISION

The district court erred by granting summary judgment dismissing Hoyt's breach-of-contract, rescission, and veil-piercing claims. In addition, the district court abused its discretion by dismissing Hoyt's remaining claims with prejudice. But the district court correctly determined that PRG was not entitled to dismissal for failure to join GMAC as a party.

**Affirmed in part, reversed in part, and remanded.**