**Susan VOLKMAN, Respondent,**

v.

**HANOVER INVESTMENTS, INC.,**
**a Maryland corporation,**
**Appellant.**

**No. A13–1111.**

Court of Appeals of Minnesota.

March 3, 2014.

Washington County District Court, File No. 82–CV–13–384.

William J. Egan, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, for respondent.

Joseph M. Sokolowski, Sten–Erik Hoidal, Fredrikson & Byron, P.A., Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's denial of its motion to dismiss for lack of personal jurisdiction. We affirm.

## FACTS

Appellant Hanover Investments Inc. is a Maryland corporation and the parent company and sole owner of One Call Concepts Inc. (OCC), a Maryland corporation. Hanover's sole purpose is to own 100% of the stock of OCC. For approximately $33,000,000, in February 2008, Hanover acquired 100% of the stock of OCC from R. Thomas Hoff, OCC's founder and president. After Hanover's acquisition of OCC, Hoff remained president of OCC and was Hanover's president and chief executive officer.

OCC operates one-call notification centers throughout the United States. One-call notification centers serve as communications links between excavators and utility companies to ensure public safety during excavation work. For approximately 22 years, ending December 31, 2010, OCC operated the call center for Gopher State

One Call, Minnesota's one-call notification center.

From 1984 until 2010, OCC employed respondent Susan Volkman in Minnesota. In 2010, OCC employed Volkman under an employment agreement made January 1, 1993, which provided that "Employer hereby employs Employee to serve as Vice President of [OCC] at its corporate office located in Minnesota." When OCC terminated Volkman's employment, Volkman was the chief operating officer of OCC and a shareholder of Hanover under a February 2008 shareholder agreement between Volkman and Hanover.[1] The shareholder agreement conditions Volkman's shareholder status on her continued employment with OCC and provides as follows:

> If a Shareholder's employment with OCC is terminated for Good Cause and the Board of Directors of the Company agrees that OCC terminated the Shareholder for Good Cause, the Company shall redeem, and the terminating Shareholder ("G. C. Shareholder") shall sell, all, but not less than all, of such G.C. Shareholder's Common Stock.

The shareholder agreement also provides for the purchase price of a shareholder's common stock and the terms of payment, permitting Hanover to, among other things, purchase the common stock of a shareholder terminated for good cause by OCC at a price equal to 10% of the fair market value of the Hanover shares. Under the shareholder agreement, Hanover's board has sole discretion to determine the overall value of Hanover; an independent appraiser determines the portion of Hanover's overall value contained in the former employee's shares, taking into account any applicable factors, such as a minority discount.

On January 8, 2010, Hanover terminated Volkman's employment for cause. In early February 2010, legal counsel for OCC sent Volkman's legal counsel two letters by facsimile transmission and U.S. Mail. The record is unclear about which letter counsel sent first. In one letter, the attorney advised that he was counsel for OCC; noted Volkman's receipt of written notice of termination on January 8, 2010; and addressed OCC's severance package and Volkman's rejection of it. In the other letter, without noting whom he represented, the attorney addressed the shareholder agreement between Hanover and Volkman; noted that "OCC terminated for cause the employment of Ms. Volkman under her Employment Agreement dated January 1, 1993"; and stated that, "[a]s a result *OCC* invokes its right to immediately redeem the Shares after the Involuntary Termination with Good Cause under Sections 4.1 and 4.6 of the Shareholders' Agreement." (Emphasis added.) The letter stated that the fair market value of Volkman's shares was $19,000 and that the purchase price was "reduced to . . . $1,900 . . . for purposes of redemption under Section 4.6."

In April 2012, Volkman sued OCC and Hoff in Maryland, alleging breach of her employment agreement and other claims. The Maryland court dismissed Hoff and most of Volkman's claims against OCC but allowed her to proceed to prove her claim of "a defective 'for cause' termination and nominal damages, if any."[2] In December 2012, Volkman sued Hanover in Minnesota in this case for breach of the shareholder agreement. Hanover moved to dismiss

---

1. OCC senior management, including Volkman, owned 80%, and Hoff's children owned 20%, of Hanover. Volkman owned 19% of Hanover.

2. In March 2013, Volkman and OCC stipulated to a dismissal of the Maryland case with prejudice.

the case for lack of personal jurisdiction and forum non conveniens. In April 2013, the district court denied Hanover's motion.

This appeal follows. Hanover challenges only the district court's denial of its motion to dismiss on the basis of lack of personal jurisdiction.

## ISSUE

Does the district court have specific personal jurisdiction over Hanover?

## ANALYSIS

Hanover challenges the district court's order denying its motion to dismiss for lack of personal jurisdiction. The district court concluded that it has specific personal jurisdiction over Hanover because, "by contracting with Volkman, a Minnesota resident, [Hanover] had the purposeful minimum contacts required with the State of Minnesota to satisfy due process" and "because Hanover's contacts with Minnesota arise from or relate to Volkman's claim," noting the following in its order:

> Hanover reached out to and entered into a contract with a Minnesota resident who also was the chief operating officer of its wholly-owned and only subsidiary, OCC, and who was responsible for managing that subsidiary in Minnesota under a contract with an entity created by the State of Minnesota whose sole function was to ensure the safety of Minnesota citizens, workers and residents. The contract was signed by Volkman in Minnesota. Hanover allegedly breached its contract with the Minnesota resident citing conduct that occurred in Minnesota involving its only subsidiary, a Minnesota company staffed by Minnesota citizens. Considering all of the circumstances, Hanover should reasonably have expected to be potentially haled into a Minnesota court by

Volkman for any legal action under the Shareholders' Agreement.

■■■ "Jurisdiction is a question of law that [appellate courts] review de novo." *In re Comm'r of Pub. Safety,* 735 N.W.2d 706, 710 (Minn.2007) (quotation omitted). Immediate appeal is permitted when a district court denies a motion to dismiss for lack of personal jurisdiction. *Hunt v. Nevada State Bank,* 285 Minn. 77, 88–89, 172 N.W.2d 292, 299–300 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). Once a defendant challenges jurisdiction, "the burden is on the plaintiff to prove that sufficient contacts exist with the forum state." *Juelich v. Yamazaki Mazak Optonics Corp.,* 682 N.W.2d 565, 569–70 (Minn.2004). "[I]f a motion to dismiss is supported by affidavits, the nonmoving party cannot rely on general statements in [her] pleading." *Hoff v. Kempton,* 317 N.W.2d 361, 363 n. 2 (Minn.1982) (quotation omitted). But, at the pretrial stage, "the plaintiff's allegations and supporting evidence are to be taken as true." *Juelich,* 682 N.W.2d at 570. "In a close case, trial courts should resolve doubts in favor of retention of personal jurisdiction." *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 409 (Minn.1992).

■■■ "To sustain personal jurisdiction over a foreign corporation, [an appellate court] must find both that personal jurisdiction is authorized by the Minnesota long-arm statute and that the exercise of such jurisdiction does not violate the due process requirement that the nonresident defendant have certain minimum contacts with the forum state." *Domtar, Inc. v. Niagara Fire Ins. Co.,* 533 N.W.2d 25, 29 (Minn.1995) (quotation omitted), *cert. denied,* 516 U.S. 1017, 116 S.Ct. 583, 133 L.Ed.2d 504 (1995). The Minnesota long-arm statute, Minn.Stat. § 543.19 (2012), "permits courts to assert jurisdiction over

defendants to the extent that federal constitutional requirements of due process will allow." *Id.* "To satisfy federal due process, a plaintiff must demonstrate that the defendant purposefully established minimum contacts in the forum state." *Id.* at 30 (quotations omitted). "Once the plaintiff establishes that the defendant has minimum contacts with the forum, the defendant can still defeat jurisdiction if it can show that the exercise of jurisdiction is not reasonable." *Id.*

■■■■ "The minimum contacts requirement may be satisfied in two different contexts. These two contexts are referred to as general personal jurisdiction and specific personal jurisdiction." *Id.* (quotation omitted). "General personal jurisdiction exists when a nonresident defendant's contacts with the forum state are so substantial and are of such a nature that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts with the forum state." *Id.* "Before a court may constitutionally assert general jurisdiction over a nonresident defendant, the defendant must have continuous and systematic contacts with the forum state." *Id.* "Specific personal jurisdiction exists when the defendant's contacts with the forum state are limited, yet connected with the plaintiff's claim such that the claim arises out of or relates to the defendant's contacts with the forum." *Id.*

■■■ Hanover argues that the district court erred by concluding that specific personal jurisdiction exists based on the shareholder agreement. "In Minnesota, a five-factor test has been used to determine whether the exercise of personal jurisdiction over a foreign defendant is consistent with due process." *Juelich,* 682 N.W.2d at 570. In *Juelich,* the supreme court used the five-factor test to determine whether the exercise of personal jurisdiction over a

foreign defendant was consistent with due process when a party asserted that Minnesota had *specific* personal jurisdiction over defendant. *Id.* at 570 n. 3, 573. *But cf. Domtar,* 533 N.W.2d at 30–35 (determining the existence of specific personal jurisdiction without discussing the five-factor test).

Based on *Juelich,* we apply the five-factor test in this case. The test requires the court to evaluate the following factors:

(1) the quantity of contacts with the forum state;

(2) the nature and quality of those contacts;

(3) the connection of the cause of action with these contacts;

(4) the interest of the state providing a forum; and

(5) the convenience of the parties.

*Juelich,* 682 N.W.2d at 570. "The first three factors determine whether minimum contacts exist and the last two factors determine whether the exercise of jurisdiction is reasonable according to traditional notions of fair play and substantial justice." *Id.* "The first three factors are the primary factors, with the last two deserving lesser consideration." *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.,* 332 N.W.2d 904, 907 (Minn.1983).

### 1. Quantity of Contacts

### 2. Nature and Quality of Contacts

Volkman maintained her employment with OCC in Minnesota from 1984 until 2010. Volkman's employment agreement required her to work in Minnesota. Hanover knew of Volkman's employment agreement with OCC when it acquired 100% of the stock of OCC in 2008. Volkman's shareholder agreement with Hanover required her to maintain her employment in order to maintain her shareholder status. Hanover knew that Volkman's employment

contract with OCC required her to maintain her employment in Minnesota.

Specific jurisdiction exists for "a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *see also Juelich,* 682 N.W.2d at 570 n. 3 (similar). A contract between parties of different states does not, standing alone, "automatically establish sufficient minimum contacts" to support jurisdiction in either party's home state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). But "[a] single contact with the forum can be sufficient if the cause of action arises out of that contact." *Domtar,* 533 N.W.2d at 31. "When a claim arises out of a contract that has a substantial connection with the forum state, specific jurisdiction exists." *Id.* (quotation omitted). Without citation, Hanover argues that "[t]he fact that [Volkman] conducted business for OCC in Minnesota and was terminated by OCC is immaterial to whether there is *specific* personal jurisdiction over Hanover." We disagree.

In *Domtar,* the supreme court concluded that the activities of a foreign (Canadian) insurer that entered into a liability insurance contract with a Minnesota corporate resident "were insufficient to constitute 'continuous and systematic activity'" and therefore did not support general personal jurisdiction over the insurer in a Minnesota court. *Id.* at 30. But the court held that the insured's coverage claim against the foreign insurer "[arose] out of or relate[d] to [the insurer]'s minimum contacts with Minnesota, thereby supporting a Minnesota court's assertion of *specific* personal jurisdiction over [the nonresident insurer]." *Id.* at 34 (emphasis added). The court noted that "[t]he approach of assert-ing personal jurisdiction over insurance companies ... faithfully observes the Supreme Court's emphasis in contract cases on the future consequences contemplated by the parties when executing the contract." *Id.* at 32. Although *Domtar* arose in the context of a liability-insurance-coverage claim against a foreign insurance company, we conclude that the supreme court's reasoning underlying its determination of the existence of specific personal jurisdiction applies to the facts and claims in this case.

The undisputed evidence shows that Volkman was able to purchase her Hanover shares only because of her senior management position with OCC *in Minnesota,* and Volkman could not purchase Hanover shares without signing the shareholder agreement with Hanover. The shareholder agreement conditioned Volkman's ongoing shareholder ownership upon her continued employment *in Minnesota* with OCC, Hanover's wholly owned subsidiary. Volkman's employment agreement reflects that she and OCC contemplated that her employment would continue for an indefinite period of time. Volkman's employment in Minnesota did continue for a substantial period of time, and Hanover terminated Volkman's employment in Minnesota. Whether Volkman signed the shareholder agreements in Minnesota is not determinative. *Cf. Marquette Nat'l Bank of Mpls. v. Norris,* 270 N.W.2d 290, 295 (Minn.1978) ("The fact that the nonresident appellants were never physically present in the state in the course of their transaction, which was accomplished entirely by telephone and mail, is clearly of no significant consequence.").

Hanover correctly notes that the shareholder agreement does not mention Minnesota. The shareholder agreement includes a Maryland choice-of-law provision, and, as to arbitration of disputes over the value of

shares or payment for shares, a Maryland choice-of-forum provision. But "[a] choice-of-law clause is not sufficient to confer jurisdiction." *Dent–Air*, 332 N.W.2d at 908. Had the parties wanted to ensure the use of Maryland's courts in the event of a breach of the shareholder agreement, they could have included a broader choice-of-forum provision in the agreement.

Hanover also argues that Minnesota may not exercise specific personal jurisdiction based on the shareholder agreement alone because Hanover was not the aggressor in negotiations. Hanover's argument is not persuasive. Volkman and OCC were in an employment relationship from 1984 to 2010. Volkman and Hanover were in a shareholder relationship from 2008 to 2010. Who initiated the relationships is not a material factor given the length of the parties' relationships with one another. The parties' shareholder agreement and related employment agreement existed for many years and contemplated continuation indefinitely. The quantity, nature, and quality of Hanover's contacts with Minnesota favor Minnesota's exercise of specific personal jurisdiction over Hanover.

### 3. Connection of the contacts with the cause of action

 Hanover's contacts with Minnesota are directly connected to Volkman's cause of action that arises out of her shareholder agreement with Hanover and therefore Hanover's contacts with Minnesota favor Minnesota's exercise of specific personal jurisdiction.

### 4. Minnesota's interest in providing a forum

 Minnesota has "an interest in providing a forum for its residents who have allegedly been wronged." *Id.* But this interest "is not a contact and cannot estab-

lish personal jurisdiction." *Id.* Here, based on Hanover's contact with Minnesota through the shareholder agreement, Minnesota's interest in providing a forum supports the exercise of jurisdiction. *See Trident Enters. Int'l, Inc. v. Kemp & George, Inc.,* 502 N.W.2d 411, 416 (Minn. App.1993) (viewing Minnesota's interest in providing forum in light of other factors that favored exercising jurisdiction to determine that Minnesota's interest in providing forum supported exercise of jurisdiction). Minnesota's interest in providing a forum for Volkman favors Minnesota's exercise of specific personal jurisdiction over Hanover.

### 5. Convenience of the parties

Jurisdiction should be exercised "whenever minimum contacts are present ... unless the court finds that Minnesota jurisdiction is improper on *forum non conveniens* grounds." *Dent–Air*, 332 N.W.2d at 909. Generally, a strong presumption exists in favor of a plaintiff's choice of forum. *Paulownia Plantations de Panama Corp. v. Rajamannan,* 793 N.W.2d 128, 137 (Minn.2009). Here, the undisputed evidence is that Hanover (albeit apparently acting through OCC) sought to redeem its shares from Volkman under the shareholder agreement on the basis of Volkman's conduct in Minnesota as an employee of Hanover's wholly owned subsidiary. Although Hanover would be required to travel to Minnesota, Maryland is not so distant that requiring Hanover to travel to Minnesota makes jurisdiction unreasonable. Hanover has failed to rebut the strong presumption in favor of Volkman's choice of forum.

 "The concept of fair play and substantial justice can defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Domtar*, 533 N.W.2d at 34

(quotation omitted). Hanover "bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See id.* (quotation omitted).

In deciding whether the exercise of jurisdiction is reasonable, courts consider factors such as the burden on the defendant in litigating in the forum state, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

*Id.*

In this case, considering the relevant factors, we conclude that Hanover has failed to rebut the presumption of reasonableness, and we hold that subjecting Hanover to specific personal jurisdiction in Minnesota comports with traditional notions of fair play and substantial justice. We conclude that the district court did not err by denying Hanover's motion to dismiss for lack of jurisdiction. We do not reach Volkman's argument that the Minnesota courts may exercise personal jurisdiction over Hanover based on an alter-ego theory, an argument that the district court did not reach. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) ("[T]his court will not consider the applicability of [a legal theory] on appeal, even though the question was raised below, if it was not passed on by the [district] court below." (quotation omitted)).

## DECISION

The contacts of Hanover with Minnesota were sufficient to subject Hanover, a foreign corporation, to specific personal jurisdiction in the courts of Minnesota when Hanover entered into a shareholder agreement with Volkman, a Minnesota resident, and the agreement conditioned Volkman's shareholder status on her continued employment in Minnesota.

**Affirmed.**