# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1307

Scott Rilley, et al.,
Respondents,

vs.

MoneyMutual, LLC,
Appellant.

**Filed May 18, 2015**
**Affirmed**
**Smith, Judge**

Dakota County District Court
File No. 19HA-CV-14-858

Daniel C. Bryden, E. Michelle Drake, Nichols Kaster, John G. Albanese, PLLP, Minneapolis, Minnesota; and

Mark Heaney, Heaney Law Firm, LLC, Minnetonka, Minnesota (for respondents)

Joseph M. Windler, Christina Rieck Loukas, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and

Donald J. Putterman (pro hac vice), Putterman Logan, San Francisco, California (for appellant)

Considered and decided by Smith, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

## S Y L L A B U S

A nonresident defendant creates sufficient contacts to establish personal jurisdiction in Minnesota when it solicits Minnesota residents via television advertising and e-mails and generates revenue from known Minnesota residents through its website.

## OPINION

**SMITH**, Judge

We affirm the district court's denial of appellant MoneyMutual's motion to dismiss because the respondents alleged sufficient minimum contacts to establish personal jurisdiction. The district court also did not abuse its discretion when it determined that the lenders were not indispensable parties.

### FACTS

Appellant MoneyMutual, LLC, a Nevada corporation, operates a website that allows individuals to apply for short-term loans, commonly known as "payday loans." Once an application is submitted, MoneyMutual offers the application to its lender network. After a lender selects the application, MoneyMutual notifies the applicant via e-mail and receives a fee from the lender. To promote its services, MoneyMutual advertises its website through television commercials. In addition, MoneyMutual e-mails marketing offers to people who have previously started or submitted a loan application.

Respondents, four Minnesota residents who used the MoneyMutual website to obtain loans, filed a class-action complaint against MoneyMutual. Respondents allege that MoneyMutual's website and advertising contained false and misleading statements, that MoneyMutual matched them with lenders that were unlicensed in Minnesota, and that their loans were illegal under Minnesota law. Respondents claim that MoneyMutual violated Minnesota's consumer-protection statutes, Minn. Stat. §§ 47.60, .601 (2014), 325D.44 (2014), 325F.67 (2014), 325F.69 (2014), breached its duty "not to engage in or

facilitate . . . illegal conduct," unjustly enriched itself, participated in a civil conspiracy, and aided and abetted unlicensed lenders.

On April 28, 2014, MoneyMutual moved to dismiss the complaint for lack of personal jurisdiction and for failure to join indispensable parties. In response, respondents submitted additional evidence alleging that they submitted MoneyMutual applications with their Minnesota contact information from computers in Minnesota after seeing MoneyMutual advertisements in Minnesota. In addition, they submitted affidavits detailing MoneyMutual's advertising in Minnesota. The district court denied MoneyMutual's motion, concluding that "MoneyMutual has sufficient contacts with Minnesota" because of its advertising and regular communication with Minnesota loan applicants. The district court also concluded that the lenders were not indispensable parties because it could provide complete relief for the claims in their absence.

## ISSUES

I.      Did the district court err in concluding that MoneyMutual had sufficient contacts for personal jurisdiction in Minnesota?

II.     Did the district court abuse its discretion in concluding that the lenders were not indispensable parties?

## ANALYSIS

### I.

MoneyMutual argues that the district court erred by denying its motion to dismiss for lack of personal jurisdiction. We review de novo whether personal jurisdiction exists. *Volkman v. Hanover Invs., Inc.*, 843 N.W.2d 789, 794 (Minn. App. 2014). To establish

3

personal jurisdiction, the plaintiff must make a prima facie showing of jurisdiction, and the complaint and supporting evidence will be taken as true. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn. 1976). The court must view the evidence in the light most favorable to the plaintiff. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Doubts should be resolved in favor of retaining jurisdiction. *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 818.

A Minnesota court may exercise personal jurisdiction over an out-of-state defendant as long as jurisdiction is authorized by the long-arm statute and comports with the constitutional due-process requirement. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). Because Minnesota's long-arm statute extends to the limits of due process, *see* Minn. Stat. § 543.19, subd. 1 (2014), the inquiry turns on whether the defendant has sufficient minimum contacts with Minnesota so that exerting personal jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quotation omitted). Because our ultimate conclusion depends on the Due Process Clause of the United States Constitution, we apply federal caselaw in examining this issue. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

To exercise personal jurisdiction consistent with due process, the out-of-state defendant must have purposefully availed itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985). A court must focus "on the relationship among the defendant, the forum, and the litigation." *Griffis v. Luban*, 646 N.W.2d 527, 532 (Minn. 2002)

4

(quotation omitted). To determine if minimum contacts exist, a court considers five factors: (1) the quantity of the defendant's contacts with Minnesota; (2) the nature and quality of the defendant's contacts with Minnesota; (3) the connection between the claims and the defendant's contacts; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties. *Volkman*, 843 N.W.2d at 795. The first three factors are given greater weight than the last two. *Id.*

The third factor determines which form of personal jurisdiction may exist. General jurisdiction exists when the defendant's contacts are "continuous and systematic," so the forum may assert jurisdiction regardless of whether the claims are related to the contacts. *Id.* at 795. For specific jurisdiction to exist, the defendant must have "purposefully directed" its actions at the forum state, and the claims must "arise out of or relate to" the contacts. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (quotations omitted). Respondents assert that specific jurisdiction exists here because MoneyMutual conducted business activities in Minnesota and their claims arise from those activities.

MoneyMutual argues that personal jurisdiction cannot be based on: (1) any contact it had with the respondents because those contacts are based on the "fortuitous" presence of the respondents in Minnesota; (2) its television commercials that aired in Minnesota because they were not targeted solely at Minnesota; or (3) its website, which is accessible from Minnesota, because it is not targeted solely at Minnesota. We agree that personal jurisdiction would not exist if we disregarded these items; however, we are not persuaded by MoneyMutual's contention that we must ignore the plethora of contacts alleged by respondents.

MoneyMutual first argues that the district court relied on the respondents' contacts with Minnesota, not its own. MoneyMutual contends that its contacts with Minnesota were limited to the respondents' "'fortuitous' presence in the forum and 'unilateral activities.'" MoneyMutual's argument appears to be that any contact involving a plaintiff cannot also be a contact of the defendant's, but one does not preclude the other. Caselaw makes clear that when a resident of a forum state leaves that state, his residency alone cannot establish personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014). But this is not one of those cases. Here, MoneyMutual reached into Minnesota through its advertising and communications. The respondents were in Minnesota at all times: when they saw MoneyMutual advertising, when they interacted with MoneyMutual, when they submitted applications indicating they were Minnesota residents, and when MoneyMutual sold the respondents' applications to lenders for profit. Mere residency of the respondents is not the sole basis for personal jurisdiction here; rather, MoneyMutual's efforts to reach the respondents and conduct business with them are the bases.

MoneyMutual also states that each respondent initiated communication with MoneyMutual by visiting its website and submitting an application and that its e-mails responding to the applications were automated. Therefore, according to MoneyMutual, the respondents acted unilaterally. This argument fails. First, it disregards MoneyMutual's active solicitation of Minnesota residents, without which the respondents might never have become aware of MoneyMutual or its services. Second, MoneyMutual disregards its own actions to ensure that a loan is created, such as encouraging inquiring customers via phone conversations and e-mail to submit an application online. The

6

interaction between the respondents, MoneyMutual, and the lenders is better described as a three-sided transaction with each party taking action before the loan is made, rather than a series of unilateral acts by the respondents. In order to obtain a loan, respondents submitted applications to MoneyMutual. MoneyMutual then offered each application to its lender network. Each time a lender selected an application, MoneyMutual notified the respondent who had submitted the application via e-mail and received a fee from the lender. Given this business model, the contacts are not based on the respondents' unilateral acts; MoneyMutual took independent action by selling the contact information to lenders *after* it knew that the applicant was a Minnesota resident, thus generating its own profit in the second step of the overall transaction.

Additionally, MoneyMutual analyzes each named respondent separately, giving no weight to the allegation that MoneyMutual received more than 1,000 loan applications from Minnesota residents. The sheer volume of loan applications indicates that MoneyMutual's contacts with Minnesota were not limited to those who "fortuitously" happened to be Minnesota residents, but rather the result of a business strategy that included a Minnesota market. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Penn. 1997) (theorizing that it would be "fortuitous" if a subscription-based Internet news service with no Pennsylvanian subscribers found itself sued in Pennsylvania because an Ohio subscriber downloaded a message and forwarded it to a Pennsylvanian). Furthermore, MoneyMutual is capable of blocking its advertisements from jurisdictions where it does not do business, and it has done so in some jurisdictions. MoneyMutual's e-mails also indicate that its services may not be available in all areas,

7

implying that its automated replies connecting applicants with lenders confirm that the resident lives in a market where MoneyMutual offers its services. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 712 (8th Cir. 2003) (holding that a website that accepts online loan applications and provides electronic responses may form the basis of personal jurisdiction if the plaintiffs demonstrate that forum residents actually accessed the website).

Next, MoneyMutual argues that specific jurisdiction does not exist because its advertisements were not "expressly aimed" at Minnesota. When an intentional tort is at issue, a court may exert personal jurisdiction over a foreign defendant if the effects of the tort were felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 1487 (1984). The Minnesota Supreme Court has adopted a three-prong effects test requiring the plaintiff to show that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity.

*Griffis*, 646 N.W.2d at 534.

The respondents alleged sufficient targeting of the Minnesota market. First, the respondents alleged that MoneyMutual television commercials have been broadcast in Minnesota since at least 2010. MoneyMutual denies that it placed ads with any Minnesota-based or local stations, but does not deny using national advertising that includes Minnesota, that its services are available in Minnesota, or that its advertisements

8

were intentionally broadcast in Minnesota. MoneyMutual appears to argue that advertising is not expressly aimed at Minnesota unless it specifically mentions Minnesota, airs only in Minnesota, or is otherwise customized to the Minnesota market. But we have previously affirmed a finding of personal jurisdiction based on national advertising and marketing where the intended market merely included Minnesota. *See, e.g.*, *State by Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 719-20 (Minn. App. 1997), *aff'd*, 576 N.W.2d 747 (Minn. 1998).[1]

Second, MoneyMutual's communications with the respondents evinced a willingness to offer its services to Minnesota residents. The respondents allege that when one Minnesota resident called MoneyMutual from her Minnesota phone number after seeing a television commercial broadcast in Minnesota, a MoneyMutual representative directed her to its website to complete a loan application. Then, after respondents submitted applications confirming that they were Minnesota residents, MoneyMutual e-mailed respondents to notify them that MoneyMutual had matched them with a lender. In addition, MoneyMutual sent follow-up e-mails, called "offers," encouraging past Minnesota customers to use its services again.

---

[1] MoneyMutual argues that *Granite Gate* is distinguishable from the present case and "utterly inconsistent" with subsequent caselaw. MoneyMutual distinguishes this case from *Granite Gate* because it does not profit directly from Minnesota residents; it profits only from the sale of Minnesota residents' applications information to lenders. The distinction does not affect the analysis under *Granite Gate*, and the use of three-sided transactions does not insulate MoneyMutual from suit in states where it advertises its services and profits from residents. *Granite Gate*, 568 N.W.2d at 720 ("A defendant cannot hide behind the structuring of its distribution system when the defendant's intent was to enter the market in the forum state and profit thereby." (quotation omitted)). Furthermore, *Granite Gate* is compatible with current caselaw, and no Minnesota cases have treated it negatively.

9

Finally, MoneyMutual argues that its website also was not expressly aimed at Minnesota and that basing personal jurisdiction on a website would subject website operators to "universal jurisdiction" because they could be sued anywhere the website is accessed. MoneyMutual's "universal jurisdiction" argument is somewhat hyperbolic because personal jurisdiction continues to be bounded by due process, even when based on Internet contacts. For example, a website that can be accessed from anywhere cannot provide the sole basis for personal jurisdiction if it has never been visited by a forum resident. *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010).

Furthermore, we find it unwise to disregard contacts through an openly accessible website given the increased tendency for commerce to take place via the Internet, particularly when the website is used to circumvent Minnesota law. Minnesota has expressed a clear intent to regulate payday lending and to protect its residents from predatory practices by enacting statutes that govern not just lenders, but also those who arrange payday loans. *See* Minn. Stat. §§ 47.60-.601 (2014). Moreover, Minnesota's long-arm statute extends to the limits of due process, and nothing here would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158 (quotation omitted). The MoneyMutual website contributes to the required minimum contacts because it is a commercial website that was visited repeatedly by customers known by MoneyMutual to be Minnesotans to submit applications for payday loans. When considered alongside MoneyMutual's advertising, acceptance of and profit from more than 1,000 loan applications from Minnesotans, and e-mail communications

10

with Minnesota residents, we hold that the district court did not err when it denied MoneyMutual's motion to dismiss for lack of personal jurisdiction.

## II.

MoneyMutual also challenges the district court's denial of its motion to dismiss for failure to join indispensable parties. MoneyMutual argues that, because it did not make any loans and is not a short-term lender, the actual lenders must be joined. The district court held that the lenders were not indispensable parties because: (1) the respondents' claims were "probably" akin to torts and there is no requirement that a plaintiff join all tortfeasors in a single suit; (2) MoneyMutual owed duties to the respondents independent of duties that the lenders owed; and (3) the claims were based on alleged misrepresentations made by MoneyMutual, not the lenders.

Denial of a motion to dismiss for failure to join indispensable parties is reviewed for abuse of discretion. *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 716 N.W.2d 366, 377 (Minn. App. 2006), *aff'd*, 736 N.W.2d 313 (Minn. 2007). First, MoneyMutual must show that the lenders were necessary. A party is necessary if complete relief cannot be granted in its absence or it claims an interest in the subject of the litigation. Minn. R. Civ. P. 19.01. Then, MoneyMutual must show that the lenders are "parties without whom the action could not proceed in equity and good conscience." *Hoyt Properties*, 716 N.W.2d at 377 (quotation omitted).

MoneyMutual's argument that the lenders must be joined is unpersuasive. Respondents essentially allege that they were harmed because MoneyMutual facilitated illegal loans and misrepresented the loans as being compliant with Minnesota law.

11

MoneyMutual argues that, when a claim involves a contract, all contracting parties must be joined. In breach-of-contract cases, we have affirmed dismissal of cases for failure to join all contracting parties. *See, e.g.*, *Potter v. Engler*, 130 Minn. 510, 512-13, 153 N.W. 1088, 1089 (1915). But we have also allowed cases to proceed even when all contracting parties were not joined, particularly when complete relief could be granted and there was minimal risk of multiple suits. *See, e.g.*, *Hoyt Props.*, 716 N.W.2d at 378; *Murray v. Harvey Hansen-Lake Nokomis, Inc.*, 360 N.W.2d 658, 661-62 (Minn. App. 1985). Furthermore, with torts and analogous statutory claims, it is well-established that a plaintiff is not required to join all tortfeasors in a single suit. *See, e.g.*, *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 456 (Minn. 2007).

None of respondents' claims allege that MoneyMutual is liable under the loan contracts themselves, and MoneyMutual does not dispute that the claims at issue here allege duties that are separate from those owed by the lenders under the contracts and the consumer-protection statutes. MoneyMutual provides no other reasons why complete relief could not be accorded in the lenders' absence or why the lenders would claim an interest in the subject of this litigation. The district court therefore did not abuse its discretion in denying MoneyMutual's motion to dismiss.

## D E C I S I O N

Because the respondents alleged sufficient minimum contacts to establish personal jurisdiction over MoneyMutual, the district court did not err by denying MoneyMutual's motion to dismiss for lack of personal jurisdiction. In addition, because MoneyMutual has not demonstrated that complete relief cannot be accorded in the absence of the

12

lenders, the district court did not abuse its discretion by denying MoneyMutual's motion to dismiss for failure to join an indispensable party.

**Affirmed.**